**DUANE MORRIS LLP**
**A Delaware Limited Liability Partnership**
By: Gregory R. Haworth
    Myles A. Seidenfrau
    Steven T. Knipfelberg
One Riverfront Plaza
1037 Raymond Blvd., Suite 1800
Newark, NJ 07102-5429
Telephone:  +1 973 424 2000
Fax:  +1 973 424 2001
E-mail:  grhaworth@duanemorris.com
*Attorneys for Defendant*
*Valley National Bank*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MERRICK BANK CORPORATION,<br><br>               Plaintiff,<br><br>-against-<br><br>VALLEY NATIONAL BANK,<br><br>               Defendant. | 13-CV-7756-ES-MAH<br><br><br>**Motion Date: October 6, 2014** |

**BRIEF OF DEFENDANT VALLEY NATIONAL BANK**
**IN SUPPORT OF MOTION TO DISMISS THE FIRST, FIFTH, SEVENTH, EIGHTH**
**AND TENTH CAUSES OF ACTION OF THE SECOND AMENDED COMPLAINT OF**
**PLAINTIFF MERRICK BANK CORPORATION**

                                                                                    **Page**

I.      INTRODUCTION AND STATEMENT OF CASE...........................................................1

II.     STATEMENT OF ALLEGED FACTS............................................................................5

III.    LEGAL ARGUMENT.....................................................................................................9

        POINT ONE: THE SEVENTH CAUSE OF ACTION ALLEGING A
        VIOLATION OF THE DOT REGULATIONS BY VALLEY MUST BE
        DISMISSED BECAUSE NO PRIVATE RIGHT OF ACTION EXISTS UNDER
        THE FEDERAL AVIATION ACT OR THE DOT REGULATIONS
        PROMULGATED THEREUNDER..................................................................... 11

                1.      The FAA Does Not Contain An Express Right Of Action.......................12

                2.      The FAA Does Not Create An Implied Right of Action ..........................12

        POINT TWO: THE FIRST CAUSE OF ACTION ALLEGING BREACH OF
        CONTRACT  MUST BE DISMISSED BECAUSE THE CHARTER
        PARTICIPANTS  ARE NOT PARTIES TO THE DEPOSITORY AGREEMENT
        AND  THIRD PARTY BENEFICIARY RIGHTS WERE EXPRESSLY
        NEGATED BY THE PARTIES TO THE AGREEMENT ............................................. 14

                1.      The Charter Participants are not Direct Parties to the Contract................15

                2.      The Charter Participants are Not Intended Third Party Beneficiary..........15

        POINT THREE: THE EIGHTH CAUSE OF ACTION ALLEGING A
        VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT BY
        VALLEY AS AGAINST MERRICK AND THE PASSENGERS SHOULD BE
        DISMISSED BECAUSE (1) MERRICK FAILS TO ALLEGE FACTS
        ESTABLISHING THAT THE CFA APPLIES IN THIS CASE AND (2)
        MERRICK FAILS TO STATE A CLAIM WITH PARTICULARITY THAT
        VALLEY ENGAGED IN AN UNLAWFUL PRACTICE IN CONNECTION
        WITH THE SALE OR ADVERTISEMENT OF ITS DEPOSITORY SERVICES
        TO ANY "CONSUMER" OF SUCH SERVICES ......................................................... 18

                1.      Merrick Fails to Allege Facts Establishing that the New Jersey
                        Consumer Fraud Act Applies In This Case ..............................................18

                2.      Even If The New Jersey CFA Applies, Merrick Has Failed To
                        Establish The Elements Of The Claim.....................................................22

                        A.      Merrick's allegations relevant to its CFA claim concerning
                                Merrick and the passengers...........................................................24

i

B.      Merrick Has Failed to Allege Facts Sufficient to Establish
        Several Vital Elements of a CFA Claim. .......................................25

        i.      Merrick does not allege that Merrick or the charter
                participants are "consumers" of Valley's depository
                account services and, therefore, the CFA Claim fails........26

        ii.     Merrick does not allege that Valley sold depository
                account services to Merrick or the charter
                participants and, therefore, cannot establish an
                ascertainable loss. .............................................27

        iii.    Merrick does not allege that Valley advertised any
                of its services to Merrick or the Charter
                Participants.......................................................28

        iv.     Merrick has not alleged with particularity an
                unlawful practice by Valley.................................30

POINT FOUR: THE TENTH CAUSE OF ACTION ALLEGING A VIOLATION
OF THE NEW JERSEY CONSUMER FRAUD ACT BY VALLEY AGAINST
DIRECT AIR SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A
CLAIM WITH PARTICULARITY THAT VALLEY ENGAGED IN AN
UNLAWFUL PRACTICE IN CONNECTION WITH THE SALE OR
ADVERTISEMENT OF ITS DEPOSITORY SERVICES ...............................34

POINT FIVE: THE FIFTH CAUSE OF ACTION ALLEGING AIDING AND
ABETTING FRAUD MUST BE DISMISSED BECAUSE MERRICK FAILS TO
STATE THE CLAIM WITH PARTICULARITY .........................................36

IV.     CONCLUSION...................................................................38

DM1\4982966.4

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Airmaster Sales Co. v. Northbridge Park Co-Op*, 748 F.Supp. 1110 (D.N.J. 1990)....................16

*Alexander v. Sandoval*, 532 U.S. 275 (2001)......................................................... 11-13

*Am. Gen. Life Ins. Co. v. Altman Family Ins. Trust ex rel. Altman*, No. 08-399, 2009 WL
    5214027 (D.N.J. Dec. 22, 2009) ...........................................................................37

*Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043 (11th Cir. 2007) .........................37

*American Rubber & Metal Hose Co., Inc. v. Strahman Valves, Inc.*, No. 11-1279, 2011
    U.S. Dist. LEXIS 80083 (D.N.J. July 2011)...........................................................16

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ................................................................ 9-10

*Berel Co. v. Sencit F/G McKinley Assoc.*, 710 F.Supp. 530 (D.N.J. 1989)....................16

*Bonano v. East Caribbean Airline Corp.*, 365 F.3d 81 (1st Cir. 2004) ...................... 11-13

*Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263 (10th Cir. 2004)................................13

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ...............10, 36

*Casas v. American Airlines, Inc.*, 304 F.3d 517 (5th Cir. 2002)....................................13

*Cooper v. Samsung Electronics America, Inc.*, 374 Fed. Appx. 250 (3d Cir. 2010)....................21

*Crozier v. Johnson & Johnson Consumer Companies, Inc.* 901 F. Supp. 494 (D.N.J.
    2012) ................................................................................................... 24, 30-31

*Donnelly v. Option One Mortgage Corp.*, No. 11-7019, 2014 WL 1266209 (D.N.J. Mar.
    26, 2014) ............................................................................................23-24, 32

*Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173 (3d Cir. 2000) ..................9

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007) .......................................22-23

*Gonzaga University v. Doe*, 536 U.S. 273 (2002) ................................................. 12-13

*Grant v. The Coca-Cola Bottling Co.*, 780 F.Supp. 246 (D.N.J. 1991)..........................16

*Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275 (D.N.J. 2011)........................27

*Kalick v. Northwest Airlines Corp.*, 372 Fed. Appx. 317 (3d Cir. 2010), *cert. denied*, 131
    S.Ct. 348, 178 L.Ed.2d 225 (2010) .......................................................................12

*Lieberson v. Johnson & Johnson Consumers Companies, Inc.,* 865 F. Supp. 2d 529 (D.N.J. 2011) ............................................................................................. 27, 31-32, 36

*Lum v. Bank of Am.*, 361 F.3d 217 (3d Cir. 2004) ......................................................... 23

*Maniscalco v. Brother Intern. (USA) Corp.*, 709 F.3d 202 (3d Cir. 2013) ............... 18-19

*Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439 (D.N.J. 2012) ................................. 21

*New Jersey Turnpike Authority v. PPG Industries*, 16 F. Supp. 2d 460 (D.N.J. 1998), *aff'd*, 197 F.3d 96 (3d Cir. 1999) ............................................................................. 31

*NN&R v. One Beacon Ins. Group*, 362 F. Supp. 2d 514 (D.N.J. 2005) ................... 23, 29

*Parker v. Howmedica Osteonics Corp.*, No. 07-2400, 2008 U.S. Dist. LEXIS 2570 (D.N.J. 2008) ......................................................................................................... 34

*Pension Benefit Guar. Corp v. White Consol. Indus.*, 998 F.2d 1192 (3d Cir. 1993) ................. 15

*Rait v. Sears Roebuck and Co.*, No. 08-2461, 2009 U.S. Dist. LEXIS 7540 (D.N.J. Feb. 3, 2009) ...................................................................................................................... 23

*Ruta v. Delta Airlines, Inc.*, 322 F. Supp. 2d 391 (S.D.N.Y. 2004) ............................ 13

*Scott Aviation, Inc. v. DuPage Airport Authority*, 393 F. Supp. 2d 638 (N.D. Ill. 2005) ............. 13

*Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84 (D.N.J. 2011) ............................. 30

*South Jersey Hosp., Inc. v. Corr. Med. Servs.*, No. 02-2619, 2005 U.S. Dist. LEXIS 11693 (D.N.J. June 15, 2005) ............................................................................ 16-17

*Southern Cross Overseas Agency, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410 (3d Cir. 1999) ................................................................................................. 10

*Synovus Bank of Tampa Bay v. Valley National Bank*, 487 F. Supp. 2d 360 (S.D.N.Y. 2007) ................................................................................................................ 12-14

*Tatum v. Chrysler Group LLC*, No. 10-4269, 2012 U.S. Dist. LEXIS 171746 (D.N.J. Dec. 3, 2012) ......................................................................................................... 23

*Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979) .............................................. 11

*Weiss v. El Al Israel Airlines, Ltd.*, 433 F. Supp. 2d 361 (S.D.N.Y. 2006) ................. 13

**State Cases**

*Arc Networks, Inc. v. The Gold Phone Card Co., Inc.*, 333 N.J. Super. 587 (Law. Div. 2000) ....................................................................................................................... 22

*Broadway Maint. Corp. v. Rutgers*, 90 N.J. 253 (1982) ........................................................16

*Brooklawn v. Brooklawn Housing Corp.*, 124 N.J.L. 73 (1940) ...............................................16

*City Check Cashing, Inc. v. Nat'l State Bank*, 244 N.J. Super. 304 (App. Div. 1990).................23

*Cox v. Sears, Roebuck & Co.*, 138 N.J. 2 (1994) ....................................................................22

*Holloway v. State*, 125 N.J. 386 (1991) ..................................................................................20

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372 (2007) .......................................................................................................................22

*Medical Society of New Jersey v. American Health HMO, Inc.*, 376 N.J. Super. 48 (App. Div. 2005) ..........................................................................................................................26

*O'Loughlin v. Nat'l Cmty. Bank*, 338 N.J. Super. 592 (App. Div. 2001) ...................................29

*Quigley v. Esquire Deposition Services*, 409 N.J. Super. 69 (App. Div.), *certif. denied* 201 N.J. 154, *cert. denied* 130 S.Ct. 3473, 177 L.Ed. 1057 (2009).........................................32

*Sickles v. Cabot Corp.*, 379 N.J. Super 100 (App. Div. 2005) ...........................................26, 31

*Strulowitz v. Provident Life and Cas. Ins. Co.*, 357 N.J. Super. 454 (App. Div. 2003) ...............16

**Federal Statutes**

49 U.S.C. § 46108................................................................................................................ 12-13

**State Statutes**

N.J. STAT. ANN. § 56:8-1(a)......................................................................................................22

N.J. STAT. ANN. § 56:8-1(c)......................................................................................................22

N.J. STAT. ANN. § 56:8-1(e)......................................................................................................22

N.J. STAT. ANN. § 56:8-2 ....................................................................................................22, 26

N.J. STAT. ANN. §56:8-2.11 ......................................................................................................19

N.J. STAT. ANN. § 56:8-19 ........................................................................................................19

Utah Code Ann. § 13-11-19.........................................................................................................19

**Rules**

Fed. R. Civ. P. 8(a)(2)..................................................................................................................9

Fed. R. Civ. P. 9(b) ............................................................................................. Passim

Fed. R. Civ. P. 12(b)(6) ............................................................................................1, 9

Fed. R. Evid. 408 .........................................................................................................31

Fed. R. Evid. 408(a)(1) ...............................................................................................31

**Regulations**

12 C.F.R. § 226.13 ........................................................................................................1

14 C.F.R. Part 369 .......................................................................................................33

14 C.F.R. Part 380 ...................................................................................................4, 33

14 C.F.R. Part 380 et seq. ...........................................................................................11

14 C.F.R. § 308.34 .........................................................................................................8

14 C.F.R. § 308.34 (b)(2)(vii) ...............................................................................8, 33

14 C.F.R. § 308.34 (b)(2)(ix) ................................................................................8, 33

42 Fed. Reg. 61,408, 61,411, 61,412 and 61,415 .....................................................33

**Treatises**

9-44 Corbin on Contracts, § 44.4 ...............................................................................16

Restatement (Second) of Conflict of Laws, § 148 .....................................................18

Restatement (Second) of Conflict of Laws, § 148(2) .................................................21

Restatement (Second) Contracts, § 302 (1979) .........................................................16

Restatement (Second) of Torts (1979) .................................................................. 36-37

DM1\4982966.4

I.      **INTRODUCTION AND STATEMENT OF CASE**

The plaintiff, Merrick Bank Corporation ("Merrick"), seeks to recover losses incurred under its credit card processing agreement with a charter airline operator, Southern Sky & Tours LLC, which did business under the name of Myrtle Beach Direct Air ("Direct Air").  Under the agreement, Merrick processed credit card transactions for Direct Air and, based on available information, Merrick charged substantial fees – likely millions of dollars - over approximately a five year period.

Merrick's credit card processing agreement with Direct Air, together with applicable federal consumer regulations concerning credit card processing and credit card association rules, carried a risk of loss to Merrick of which it was fully aware.  That risk came to fruition when Direct Air went out of business. Merrick incurred credit card "chargebacks" when passengers whose flights were cancelled did not have to pay for their bookings because of  applicable federal credit card regulations protecting them.  (See  Regulation Z, 12 C.F.R. § 226.13). Merrick paid the chargebacks to the card issuing bank and has not yet been able to recoup its loss from its customer Direct Air or other responsible parties.  Rather than accept its responsibility for the risk it took, Merrick filed suit to foist its loss upon Valley National Bank ("Valley").

In its Second Amended Complaint (the "Complaint"),  Merrick alleges non-existent duties and  mischaracterizes Valley's function as a depository bank under the Department of Transportation Regulations ("DOT Regulations") and the Depository Agreement at issue in this case.  Valley now moves under Rule 12(b)(6) to dismiss several of Merrick's causes of action for failure to state a claim.  Valley will move summarily to dismiss the balance of the claims later in the case.

The circumstances giving rise to this lawsuit are as follows.  Merrick is an "acquiring bank" under the VISA, MasterCard, and Discover credit card systems.  Merrick entered into a

DM1\4982966.4

credit card processing agreement (also called a merchant agreement) with Direct Air, who provided charter flights to passengers – primarily on the east coast.

Under the merchant agreement, Merrick processed credit card transactions for Direct Air for which it received substantial monthly fees as well as fees for each transaction.  Merrick accepted the risk of loss under the merchant agreement, federal consumer regulations and credit card association rules for "chargebacks" assessed by the credit card issuing banks if Direct Air did not provide flights to passengers who had paid using their credit cards.

Direct Air is a charter operator as defined in DOT Regulations promulgated under the Federal Aviation Act ("FAA").  As a charter operator, Direct Air was subject to DOT Regulations that required Direct Air to place passenger funds in a depository account at a FDIC insured bank until such time as Direct Air provided the flights to the passengers.  Upon certifying to the depository bank that its flight had been completed, Direct Air could then withdraw funds from its depository account.

Valley was the depository bank into which Direct Air placed its funds.  Valley's limited obligations to Direct Air concerning the depository account are set forth in a depository agreement with Direct Air (attached as Exhibit A to the Complaint)(the "Depository Agreement").  In essence, Valley held the funds deposited by Direct Air until such time as Direct Air certified that the flights represented by the funds had been completed.  The Depository Agreement states unequivocally that Valley's functions thereunder are "purely ministerial in nature" and that Valley had the absolute right to rely on any instructions or representations received from Direct Air concerning its request to withdraw funds from the account.

Direct Air went out of business on March 12, 2012, leaving passengers without flights. Those passengers who paid by credit card exercised their rights under federal consumer

regulations concerning credit card processing and did not have to pay for the flights that Direct Air canceled.  As a result, the card issuing bank was required to credit the account of the cardholder/passenger who contested the charge and Merrick, in turn, was obligated to reimburse the card issuing bank.  Merrick, a sophisticated commercial entity with significant experience as an acquiring bank, was fully aware of its obligations.

Merrick alleges it paid over $26.2 million to card issuing banks for chargebacks in accordance with its legal obligations.  Merrick has recourse against Direct Air, which, by Merrick's own admission in the Complaint, perpetrated a fraud in connection with its deposits into and withdrawals from the depository account.  Merrick could not collect from the fraudster, Direct Air, which filed for bankruptcy immediately after it had ceased operations.  And Merrick has not been able to recover from JetPay Merchant Service, LLC  ("JetPay") with whom it partnered in the Direct Air deal.

Searching for a deep pocket, Merrick initially sued Valley alleging nine causes of action. Merrick asserts claims in its own name and in the name of  passengers whose actions resulted in the chargebacks on the theory that Merrick is subrogated the claims of such passengers.  Merrick also asserts claims on behalf of Direct Air whose claims Merrick obtained from the  trustee of Merrick's bankruptcy estate.   After Valley moved to dismiss several counts of the initial suit, Merrick filed the Second Amended Complaint, asserting ten causes of action in an effort to remedy the deficiencies in its pleading.  The Second Amended Complaint also is deficient which has prompted this motion.

Merrick's Complaint is significant for what it fails to allege.  Merrick does not allege that it had a contract with Valley or that Valley had agreed to indemnify Merrick or act as Merrick's guarantor for its chargeback exposure.  Merrick does not allege that it *ever* communicated

directly with Valley at any time. Merrick does not allege that it *even once* contacted Valley or its own customer, Direct Air, to ascertain the amount of funds in the Direct Air depository account, even though Merrick now asserts that it expected that sufficient funds would be in the depository account to cover the chargebacks. Merrick does not allege that it *ever* reviewed Direct Air's records or practices to confirm that Direct Air was abiding by the representations made by Direct Air to Merrick in connection with their merchant agreement.

In the end analysis, the Direct Air passengers paying by credit card did not incur a loss, and there is no legal or equitable basis to shift Merrick's chargeback exposure to Valley. Valley contends that all of Merrick's claims are without merit and will be disposed of summarily. At this time, however, to streamline the case, Valley moves to dismiss the following five (5) causes of action which fail to state a claim:

> **Seventh Cause of Action – Alleged Violation by Valley of DOT Regulations 14 C.F.R. Part 380 Concerning the Depository Account.** This claim must be dismissed because the law is clear that there is no private right of action under the DOT Regulations for Merrick to recover damages from Valley because of Valley's alleged violation of the DOT Regulations.

> **First Cause of Action - Alleged Breach of the Depository Agreement between Valley and Direct Air Based on the Passengers Being Third Party Beneficiaries of the Contract.** This claim must be dismissed because the passengers are not parties to the Depository Agreement and the Depository Agreement specifically excludes third party beneficiary rights.

> **Eighth Cause of Action – Alleged New Jersey Consumer Fraud Act Violation by Valley Against Merrick and the Passengers.** This claim must be dismissed because Merrick has failed to establish that the New Jersey Consumer Fraud Act ("CFA") should apply to this case. Moreover, even if the CFA applies, Merrick has failed to allege with particularity that Valley engaged in an unlawful practice in connection with the sale or advertisement of services to a consumer of Valley's depository account services that are at issue in this case.

4

**Tenth Cause of Action – Alleged New Jersey Consumer Fraud Act Violation by Valley Against Direct Air.** This claim must be dismissed for many of the same reasons that the Eighth Cause of Action should be dismissed.  Moreover, Merrick has alleged that Direct Air committed a fraud in its handling of the subject depository account, and Merrick has not delineated with particularity (nor could it) how Valley committed consumer fraud on the admitted fraudster Direct Air.

**Fifth Cause of Action – Alleged Aiding and Abetting Direct Air's Fraud.**  This claim must be dismissed because Merrick has failed to assert the claim with the particularity required by Rule 9(b).

The basis for the dismissal of each of these causes of action is set forth in further detail below.

## II.   STATEMENT OF ALLEGED FACTS

Merrick is a bank organized and existing under the laws of Utah with its principal place of business in South Jordan, Utah.  (Complaint, ¶ 10).  Merrick does not allege that Valley had a contractual relationship with Valley, much less one under which Valley agreed to serve as a guarantor or indemnitor for Merrick.   Merrick does not allege that it purchased services from Valley, or that Merrick provided services to Valley.

Merrick is an "acquiring bank" (also known as a "merchant bank") for merchants under the VISA, MasterCard and Discover credit card networks.  If a customer uses a credit card to purchase goods or services, the customer's own bank that issued the credit card – the "issuing bank" – transmits funds through the credit card network to the acquiring bank for that merchant, and the acquiring bank then transmits the funds to the merchant.  (Complaint, ¶¶ 14-15).

If a customer properly disputes a credit card charge – for example, if the cardholder customer does not receive the services or goods from the merchant – the customer can demand repayment from its issuing bank.  The issuing bank then initiates a "chargeback."  In accordance with regulations issued by the credit card association under which member banks such as

Merrick are bound, the acquiring bank is required to immediately return funds back to the issuing bank.  The acquiring bank then has the right to recoup the chargeback from the merchant.  In the end analysis, the acquiring bank accepts the risk that the merchant may not be solvent or otherwise is unable to repay the acquiring bank for the chargebacks.  (Complaint, ¶ 16).

Merrick served as the acquiring bank for Direct Air.  Merrick agreed to act as Direct Air's acquiring bank under a tri-party agreement between Merrick, Direct Air and JetPay.  JetPay is an Independent Sales Organization "ISO" which, among other things, identifies for Merrick potential merchants for which Merrick may serve as the acquiring bank.  JetPay reports to Merrick the results of JetPay's due diligence of potential merchants.  Merrick uses this information, in conjunction with its own due diligence, in determining whether to do business with a merchant.  Pursuant to the relationship it had developed with Merrick, JetPay identified Direct Air as a potential merchant for Merrick.  (Complaint, ¶¶ 17, 18).

Merrick alleges that it received "confirmation" from JetPay, not Valley, that Valley was serving as Direct Air's depository bank pursuant to DOT Regulations.  (Complaint, ¶ 45).  Merrick claims that, in making the decision to become Direct Air's acquiring bank, it relied on the representation Valley made to JetPay that Valley was serving as Direct Air's depository bank pursuant to DOT Regulations. (Complaint, ¶ 46).

Valley was the depository bank for Direct Air and entered into a Depository Agreement in which its functions and obligations are delineated.  (Complaint, ¶¶ 25, 28, 29 and Ex. A thereto).  Section 4.1 of the Depository Agreement provides that Valley's duties thereunder "are purely ministerial in nature."  (Depository Agreement, Section 4.1)  Further, Valley "shall not be responsible for or be required to enforce any terms or conditions under the Agreement or any other agreement."  (*Id*.)

6

Section 4.3 of the Depository Agreement provides that Valley can rely on statements made by Direct Air without verifying the truth thereof and states specifically that Valley "shall be entitled to rely upon the accuracy, act in reliance upon the contents, and assume the genuineness, of any notice, instruction, certificate, signature, instrument or other document that is given to [Valley] pursuant to this Agreement without the necessity of the Bank verifying the truth, completeness or accuracy thereof." (*Id.* at § 4.3.).  Furthermore, the Depository Agreement states explicitly that no third party beneficiary rights are intended by the parties under the agreement. (Depository Agreement, Section 7.12).

In March 2012, Direct Air ceased operations and filed for bankruptcy.  (Complaint, ¶¶ 48, 49).  Merrick does not allege that it had any communications - written or oral - with Valley during the time period that Direct Air had its depository account at Valley.  Merrick does not allege that it ever inquired of Valley, Direct Air or JetPay concerning the amount of money in Direct Air's depository account at Valley.

Direct Air's shutdown resulted in the cancellation of numerous flights.  (Complaint, ¶ 50).  Merrick, in accordance with its duties under the credit card association rules and merchant agreement paid chargebacks to the card issuing banks in excess of $26.2 million. (Complaint, ¶ 51).  Merrick paid the chargebacks and apparently has not able to collect the chargebacks from either of the two parties with whom it contracted and are liable to it – JetPay or Direct Air. Merrick claims that the funds in Direct Air's depository account should have been sufficient to cover the chargebacks it paid, but that there was a "shortfall" in the Direct Air depository account because only approximately $1 million was in the depository account at the time Direct Air filed for bankruptcy.   (Complaint, ¶¶ 54, 55).  According to Merrick, the shortfall in Direct

Air's depository account was the result of Valley not abiding by, among other things, the DOT Regulations and the Depository Agreement with Direct Air.  (Complaint, ¶¶ 60 – 68).

Merrick admits in the Complaint that Direct Air defrauded the charter participants[1] and that the charter participants were damaged by Direct Air's fraud.  While the allegations concerning Direct Air's fraud are sparse, the fraud was perpetrated by, among other things, Direct Air submitting false reports to Valley: (a) seeking to withdraw fictitious revenue allegedly generated by flights that had flown; (b) seeking to withdraw the same money twice and (c) seeking to withdraw "cash" that had never been deposited.  (Complaint, ¶ 56).  Direct Air also made misrepresentations to the charter participants. (Complaint, ¶¶  107 - 114).  Finally, Direct Air converted passenger funds.  (Complaint, ¶¶ 115 - 120).

Valley's functions under the DOT Regulations are limited.  The DOT Regulations provide only that Valley is to maintain a separate accounting for each charter group.  14 C.F.R. §  308.34 (b)(2)(vii).  Valley is to release the funds upon receipt of a certification from the air carrier that the flight represented by the funds has been completed.  14 C.F.R. § 308.34 (b)(2)(ix).  With respect to its functions, Section 4.3 of the Depository Agreement provides that Valley can rely on statements made by Direct Air "without the necessity of the Bank verifying the truth, completeness or accuracy thereof."  (Depository Agreement, Section 4.3).

Neither the DOT Regulations nor the Depository Agreement required Valley to ensure that Direct Air was depositing all passenger funds into the depository account. (*See* Depository Agreement; DOT Regulations, 14 C.F.R. § 308.34).

Among the allegations made concerning Valley's conduct, Merrick contends that Valley should have investigated whether the funds in the depository account were sufficient given the

---

[1] Passengers are referred to as charter participants under the DOT Regulations and the terms are used interchangeably herein.

amount of the advance bookings made by Direct Air and that Valley, if it had undertaken this investigation, would have understood that the amount on deposit should have been in the range of around $32 million.  (Complaint, ¶ 67).  Merrick, even though it now asserts it was relying on the depository account to recover chargebacks, does not allege that it *even once,* over a five (5) year period, requested from Direct Air or Valley information about the amount of funds in the depository account, even though Merrick knew on any given day the dollar value of the flights booked by charter participants using credit cards processed by Merrick.  Merrick could have compared the amount in the depository account to its passenger bookings to confirm that the depository account had funds sufficient to cover Merrick's chargeback risk.  Merrick does not allege that it took the few minutes needed to perform this task.  Additional allegations concerning Merrick's New Jersey CFA claim are set forth in greater detail in the legal argument section of this Brief seeking dismissal of those claims.

As will be demonstrated below, Merrick's claims under the First, Fifth, Seventh, Eighth and Tenth Causes of Action should be dismissed as a matter of law.

## III.   LEGAL ARGUMENT

### MOTION TO DISMISS STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

While a court is required to accept as true all factual allegations in the complaint, when reviewing a Rule 12(b)(6) motion, the court "need not accept as true 'unsupported conclusions and unwarranted inferences.'"  *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 184

(3d Cir. 2000) (citation omitted).  And "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 129 S. Ct. at 1949; *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997) ("[A] plaintiff's 'bald assertions' or 'legal conclusions' need not be accepted as true by a court.").

If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint not "shown" that the pleader is entitled to relief, and it must be dismissed.  *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''"  *Id*. at 1949 (quoting *Twombly*, 550 U.S. at 557).

In  determining the sufficiency of a complaint on a motion to dismiss, a court may consider public records, including judicial proceedings and documents integral to or explicitly relied upon in the complaint.  *Southern Cross Overseas Agency, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999);  *In re Burlington Coat Factory*, 114 F.3d at 1426.

For the reasons set forth below, Merrick falls well short of meeting its burden to plead a viable cause of action in its First, Fifth, Seventh, Eighth and Tenth Causes of Action.

## POINT ONE

### THE SEVENTH CAUSE OF ACTION ALLEGING A VIOLATION OF THE DOT REGULATIONS BY VALLEY MUST BE DISMISSED BECAUSE NO PRIVATE RIGHT OF ACTION EXISTS UNDER THE FEDERAL AVIATION ACT OR THE DOT REGULATIONS PROMULGATED THEREUNDER

In the Seventh Cause of Action, Merrick asserts a claim that Valley violated 14 C.F.R. Part 380 et seq. of the DOT Regulations. Merrick's assertions in the Complaint concerning Valley's duties under the DOT Regulations simply do not exist. Valley is not a guarantor of Direct Air's performance under the DOT Regulations. Valley had no duty to monitor Direct Air's conduct or to ensure that Direct Air would have sufficient funds in its depository account to cover Merrick's chargeback exposure. Merrick's ignorance of the regulations and its failure to manage its customer Direct Air are not grounds to impose liability on Valley.

In any event, regardless of the scope of Valley's obligations under the DOT Regulations, there is no express or implied right of action for private parties - whether Merrick or the passengers - to sue for damages for alleged violations of the regulations. Therefore, the Seventh Cause of Action must be dismissed.

Whether a private cause of action exists under the FAA and DOT Regulations is a question of statutory interpretation. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). Only Congress can create a private right of action to enforce a federal law, and Congress's intent is determinative. *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001). In determining whether a private cause of action exists, a court must assess whether there is an express right of action stated in the statute and, if not, whether a private right of action can be implied. *Bonano v. East Caribbean Airline Corp.*, 365 F.3d 81, 83-84 (1st Cir. 2004). The statute, and not the regulations, must be analyzed. *Id.* at 291.

In this case, it is clear that the governing statute neither expressly or impliedly provide Merrick with a private right of action.

1.      __The FAA Does Not Contain An Express Right Of Action__

The FAA contains no express private right of action, with one minor exception.  *Bonano*, *supra*, 365 F.3d at 83-84 (noting 49 U.S.C. § 46108 permits a private right of action to enforce section 41101(a)(1))   The FAA does not expressly authorize a private civil action for the DOT Regulations at issue here.  *See Synovus Bank of Tampa Bay v. Valley National Bank*, 487 F. Supp. 2d 360 (S.D.N.Y. 2007).  Consequently, there is no express private right of action.

2.      __The FAA Does Not Create An Implied Right of Action__

Because there is no express private right of action, Merrick's Seventh Cause of Action must be predicated upon an implied private right of action.  In light of the Supreme Court's decisions in *Sandoval*, *supra*, and *Gonzaga University v. Doe*, 536 U.S. 273 (2002), a private right of action cannot be implied under the FAA.

Following the *Sandoval* and *Gonzaga* decisions, the First Circuit addressed directly whether a private right of action exists under the FAA and found no such implied right.  In *Bonano*, *supra*, the plaintiff purchased airline tickets from the defendant airline, but did not receive his flight when the airline went out of business.  365 F.3d at 82. The *Bonano* court, *sua sponte*, found no private right of action implied by the FAA for a number of reasons, including the fact that the FAA was "regulatory in nature" and that the FAA contains an enforcement scheme "plainly exhibit[ing] Congress's preference for *public* enforcement."  *Id.* at 85 (emphasis in original).

Following the Supreme Court's decisions in *Sandoval* and *Gonzaga*, the courts that have addressed the issue of whether there is a private right of action under the FAA unanimously have concurred in the result reached in *Bonano.  See, e.g., Kalick v. Northwest Airlines Corp.*, 372

12

Fed. Appx. 317, 320 (3d Cir. 2010), *cert. denied*, 131 S.Ct. 348, 178 L.Ed.2d 225 (2010) (no

private right of action under FAA and DOT Regulations for passengers bumped from flights);

*Casas v. American Airlines, Inc.*, 304 F.3d 517, 523 (5th Cir. 2002) (no private right of action

under FAA for loss of goods by air carrier); *Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263,

1270 (10th Cir. 2004) (holding that no private right of action existed for disabled passengers);

*Weiss v. El Al Israel Airlines, Ltd.*, 433 F. Supp. 2d 361 (S.D.N.Y. 2006) (no private right of

action for refund of airline tickets when airline failed to provide flight).[2]

Whether a private right of action exists under the DOT Regulations at issue here was

addressed directly in the case of *Synovus Bank of Tampa Bay v. Valley Nat'l Bank*, 487 F. Supp.

2d 360  (S.D.N.Y. 2007).  The *Synovus* court  ruled that no implied private right of action exists

under the FAA and the regulations promulgated thereunder, including the regulations at issue

here.

As in the present matter, the plaintiff in *Synovus* was an acquiring bank that had paid

chargebacks to the card  issuing banks when passengers of a defunct airline, Southeast Airlines,

did not receive their flights when the airline went out of business.  Unable to collect from

Southeast Airlines, the acquiring bank, Synovus, then sued the depository bank which was

Valley National Bank - the defendant in this action.  *Id.* at 361-62.

The *Synovus* court found that no implied private right of action existed under the DOT

Regulations.  The *Synovus* court relied, as did the *Bonano* court, on the fact that Section 46108 of

---

[2] *Sandoval* and *Gonzaga* changed the analysis for determining whether a private right of action
can be implied which reduced the number of cases in which a statute will be found to have an
implied right of action.  Therefore, cases decided before *Sandoval* and *Gonzaga* that found an
implied right of action under the FAA cannot be regarded as good law.  *See, e.g., Bonano*,
*supra*, 365 F.3d at 86, n.4 (and cases cited therein); *Ruta v. Delta Airlines, Inc.*, 322 F. Supp. 2d
391, 402 (S.D.N.Y. 2004) (stating that "since the decision in *Alexander v. Sandoval*" no private
right of action could be implied from the portion of the FAA under consideration).

the FAA expressly provides a private right of action and reasoned that an express private right of action in one section of the FAA negated any inference that Congress intended an implied right of action under other sections of the FAA. *Id*. at 365. Moreover, the *Synovus* court concluded that the regulations were devoid of *any* indication that Congress was concerned about acquiring banks (a/k/a merchant banks) such as Merrick having a private right of action against a depository bank such as Valley. *Id*. The *Synovus* court summarily dismissed the claim under the DOT Regulations. *Id*. at 366.[3]

This Court should follow the holdings in the above cases which uniformly hold that the FAA and the DOT Regulations at issue contain no express or implied private right of action.

## POINT TWO

### THE FIRST CAUSE OF ACTION ALLEGING BREACH OF CONTRACT MUST BE DISMISSED BECAUSE THE CHARTER PARTICIPANTS ARE NOT PARTIES TO THE DEPOSITORY AGREEMENT AND THIRD PARTY BENEFICIARY RIGHTS WERE EXPRESSLY NEGATED BY THE PARTIES TO THE AGREEMENT

Merrick alleges that Valley breached the terms of the Depository Agreement[4] between Valley and Direct Air by failing to abide by the terms of the agreements and the DOT Regulations. (Complaint ¶¶ 72-79). Merrick bases its breach of contract claim on the assertion

---

[3] The Synovus court  also summarily dismissed all other contractual and tort claims filed by the acquiring bank, and Valley reserves all rights to move for summary judgment at a later point in the case. *Synovus, supra,* at 366.

[4] Merrick contends that there are several Depository Agreements, all of which have materially identical terms. (Complaint, ¶29).   A copy of one of the Depository Agreements is attached as Exhibit A to the Complaint.  For purposes this motion, Valley does not refute that the substance of each agreement is materially the same with respect to the facts pertinent to the issue of third party beneficiary rights.  Moreover, the Depository Agreement at Paragraph 7.9 states that New Jersey law governs. For purposes of this motion, and as it concerns the Depository Agreement only, Valley applies New Jersey law.

that: (1) the charter participants were direct parties to the Depository Agreement; or (2) the charter participants are intended third party beneficiaries to the Depository Agreement.

Merrick's breach of contract claim fails because it is indisputable on the face of the Depository Agreement that:  (1) the charter participants are not actual parties to the Depository Agreement; and (2) the parties to the Depository Agreement expressly stated that they did not intend to provide rights to any third party.  Consequently, even assuming, *arguendo,* Merrick can be equitably subrogated to the claims of the charter participants, which Valley vehemently disputes, the breach of contract claim asserted in the First Cause of Action fails.

1.     **The Charter Participants are not Direct Parties to the Contract**

Merrick alleges that the charter participants are parties to the Depository Agreement. (Complaint, ¶ 75).   In deciding this motion, the Court can review and rely on the language of the Depository Agreement attached to the Complaint.   *Pension Benefit Guar. Corp v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Merrick's assertion that the charter participants are parties to the Depository Agreement is belied by the facts.  The Depository Agreement clearly shows that the sole parties are Direct Air and Valley.  The charter participants are not identified as parties and their signatures do not appear on the Depository Agreement.  Therefore, the breach of contract claim must be dismissed because the charter participants are not direct parties.

2.     **The Charter Participants are Not Intended Third Party Beneficiary**

Merrick also bases its breach of contract claim on the assertion that the charter participants are intended third party beneficiaries to the Depository Agreement.  (Complaint, ¶ 75).  The charter participants are not third party beneficiaries because the actual parties to the Depository Agreement expressly stated that they did not intend to bestow third party beneficiary rights on any person.

Under New Jersey law, to have standing to assert rights as a third party beneficiary to a contract, the parties to the contract must have clearly intended for the contract to benefit a third party.  *See Broadway Maint. Corp. v. Rutgers*, 90 N.J. 253, 259 (1982); *Strulowitz v. Provident Life and Cas. Ins. Co.*, 357 N.J. Super. 454, 459 (App. Div. 2003).  Absent the clear intent of the contracting parties to create a legally enforceable right to a party outside the contract, the third person is merely an incidental beneficiary.  *See id.* (citing *Standard Gas Power Corp. v. New England Cas. Co.*, 90 N.J.L. 570, 573-74 (E. & A. 1917); RESTATEMENT (Second) Contracts, § 302 (1979).

The intent of the contracting parties is the decisive factor in determining whether third party beneficiary rights are intended.  *See Berel Co. v. Sencit F/G McKinley Assoc.*, 710 F.Supp. 530, 537 (D.N.J. 1989); *American Rubber & Metal Hose Co., Inc. v. Strahman Valves, Inc.*, No. 11-1279, 2011 U.S. Dist. LEXIS 80083, at *9 (D.N.J. July 2011).  New Jersey courts are reluctant to find a party is a third party beneficiary without an explicit indication that the third party is intended to have a direct claim under the contract to enforce that benefit. *See Airmaster Sales Co. v. Northbridge Park Co-Op*, 748 F.Supp. 1110, 1117 (D.N.J. 1990); *Brooklawn v. Brooklawn Housing Corp.*, 124 N.J.L. 73 (1940).  Foreseeability of a prospective benefit to a third party alone does not create third party rights to a contract.  *Grant v. The Coca-Cola Bottling Co.*, 780 F.Supp. 246, 249 (D.N.J. 1991).

In New Jersey, contracting parties may expressly create, or negate, third party rights.  *Broadway Maint. Corp., supra*, 90 N.J. at 259-60.  Where they do so, their expressed intent is determinative of the issue.  9-44 Corbin on Contracts, § 44.4.  Thus, in *South Jersey Hosp., Inc. v. Corr. Med. Servs.*, Judge Simandle refused to find third-party beneficiary status where the agreement at issue expressly provided that "[n]o patient, nor the client, nor any non-

party shall have any third party beneficiary right hereunder." 2005 U.S. Dist. LEXIS 11693 at *17.

Here, Merrick's breach of contract claim fails because the Depository Agreement expressly negates any third party beneficiary rights. The Depository Agreement between Direct Air and Valley expressly declares in Paragraph 7.12 that Direct Air and Valley did not intend to grant rights to third parties under the Depository Agreement, stating as follows:

> Except as otherwise may be provided by law, this Agreement is for the sole benefit of the parties hereto and their permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

The Court need not look any further than the language of the Depository Agreement. The intent of the parties is clear and unequivocal – there are *no* third party beneficiary rights intended. The terms of the Depository Agreement directly refute Merrick's allegation that the charter participants were intended third party beneficiaries. No third party beneficiary rights can be imposed on Valley as a matter of law. *See South Jersey Hosp., Inc.*, 2005 U.S. Dist. LEXIS 11693, at *17 (declining to find third party beneficiary status where there was express negative language). And there is no provision of law that otherwise would bar Valley and Direct Air from declining to grant third party rights under the Depository Agreement.

In sum, because the Depository Agreement expressly negates any intent to bestow third party beneficiary status to any party, Merrick's breach of contract claim must be dismissed.

## POINT THREE

**THE EIGHTH CAUSE OF ACTION ALLEGING A VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT BY VALLEY AS AGAINST MERRICK AND THE PASSENGERS SHOULD BE DISMISSED BECAUSE (1) MERRICK FAILS TO ALLEGE FACTS ESTABLISHING THAT THE CFA APPLIES IN THIS CASE AND (2) MERRICK FAILS TO STATE A CLAIM WITH PARTICULARITY THAT VALLEY ENGAGED IN AN UNLAWFUL PRACTICE IN CONNECTION WITH THE SALE OR ADVERTISEMENT OF ITS DEPOSITORY SERVICES TO ANY "CONSUMER" OF SUCH SERVICES**

1.  **Merrick Fails to Allege Facts Establishing that the New Jersey Consumer Fraud Act Applies In This Case**

As a threshold issue, Merrick has failed to allege facts sufficient to demonstrate that the New Jersey Consumer Fraud Act ("CFA") is the applicable law in this case.   A New Jersey federal court will not apply New Jersey law just because the case was filed in New Jersey. Instead, "[i]n order for [the] NJCFA to apply, New Jersey must have some qualitative connection to the allegation or to the parties." *Blackhall v. Access Grp.*, No. 2:10-00508,  2010 WL 3810864 (D.N.J. Sept. 22, 2010), citing *D'Agostino v. Johnson & Johnson, Inc.*, 133 N.J. 516, 523 (1993).

A federal court sitting in diversity applies the choice-of-law rules of the forum state to determine the controlling law.  *Maniscalco v. Brother Intern. (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013).   New Jersey has adopted the "most significant relationship" test under the Restatement (Second) of Conflict of Laws.  *Id.*, citing *P.V. v. Camp Jaycee*, 197 N.J. 132 (2008).

The "most significant relationship" test is a two part analysis which determines (1) whether a conflict exists between the laws of the potential forums and, if so, (2) which jurisdiction has the most significant relationship to the claim.  *Maniscalco*, 709 F.3d  at 207-07. As Merrick's CFA claims sound in fraud and misrepresentation, § 148 of the Restatement (Second) of Conflict of Laws sets forth the criteria for assessing which state has the most significant relationship.  *Id.* at 207.  Under § 148(2), the court determines the significance of the

relationship by considering the following contacts: (1) the place where plaintiff acted in reliance on the conduct, (2) the place plaintiff received the representations, (3) the place where defendant made the representations, (4) the residence, place of incorporation or place of business of the parties, (5) the place where a tangible thing which is the subject of the transaction was situated at the time of the representation, and (6) the place where plaintiff is to render performance.  *Id*.  For the reasons set forth below, Merrick cannot sustain its contention that the CFA applies.

Merrick asserts CFA claims on behalf of itself *and* numerous, unidentified passengers to whose claims Merrick alleged is subrogated.   With regard to Merrick's own claim, the allegations reveal at least two possible forum states: Utah and New Jersey.  Merrick is incorporated and has its principal place of business in Utah.  (Complaint, ¶ 10).  An actual conflict-of-law exists between the respective consumer fraud statutes of Utah and New Jersey because, among other things, the amount of damages recoverable under each statute is vastly different.  Under Utah's Consumer Sales Practices Act, a consumer can only recover maximum damages of $2,000.  Utah Code Ann. § 13-11-19.  Under New Jersey's CFA, however, a consumer may be entitled to treble damages of all funds acquired by a deceptive practice.  N.J. STAT. ANN. §§ 56:8-2.11 and 56:8-19.  Because an actual conflict-of-law exists,  the Court is required to address the second part of the test.

Merrick has failed to sufficiently allege that it had a significant relationship with New Jersey.  Merrick does not contend that it acted in reliance of any representation in New Jersey.  Merrick does not allege that it received a representation in New Jersey or that Valley made any representation to Merrick in New Jersey.  Merrick does not allege that any tangible thing which is subject of the transaction was situated in New Jersey at the time any representation was made.

Merrick does not even allege that it rendered performance in New Jersey.  In sum, New Jersey has no relation to the CFA claim as it concerns Merrick.

With regard to the passengers,  Merrick's contention that the CFA should apply is even weaker.  Merrick contends that it should be "equitably subrogated" to the claims of each of the passengers whose credit card issuer sought a chargeback from Merrick.   (Complaint, ¶ 130). Equitable subrogation, however, merely places the subrogee into the position of the subrogor and imparts no better right upon the subrogee than that of the subrogor.  The New Jersey Supreme Court in *Holloway v. State*, 125 N.J. 386, 397 (1991) succinctly articulated this principle as follows:

> As the right of subrogation turns on the obligation or duty that the third party itself owes the subrogor, subrogation is wholly dependent on the merits of the subrogor's claim against the third party.  The subrogee, which succeeds to the position of the subrogor, *may recover only if the subrogor likewise could have recovered*; the subrogee gains no additional rights and is subject to all defenses that were available against the subrogor. (emphasis added).

Accordingly, Merrick  must  allege sufficient  facts to establish that the New Jersey CFA is the controlling law for *each* of the passengers' claims.

Merrick has failed to allege facts to establish that *any* passenger had a qualitative connection or significant relationship with New Jersey much less all of them. Merrick does not allege that any of the passengers were domiciled in New Jersey and no such inference can be inferred from the facts alleged.  To the contrary, it is likely that  many of the passengers would have been domiciled outside of New Jersey because Direct Air, based in Myrtle Beach, South Carolina, operated interstate flights along the east coast and not all passengers would live in New Jersey.   Moreover, Merrick does not allege that any passengers acted in reliance on a representation made in New Jersey, or that any of the passengers received any representation in

New Jersey, or that Valley made any representation to any passenger in New Jersey.  Merrick does not allege that some tangible thing which is subject of the transaction was situated in New Jersey at the time when any representation was made to any passengers.  Merrick does not allege that any of the passengers rendered some performance in New Jersey.

Merrick alleges that the misrepresentations at issue were made on Direct Air's website, including the Public Charter Operator Participant Agreement found on the website.  (Complaint, ¶ ¶ 35-38)  According to the Public Charter Operator-Participant Agreement, Direct Air was based in South Carolina.  (*See* Exhibit A to Declaration of Steven T. Knipfelberg.).  If an inference is to be drawn, the most reasonable inference is that Direct Air's website was operated from South Carolina.  Merrick does not allege that the website was created or operated in New Jersey and has failed to establish any connection between the Direct Air website and New Jersey.

Merrick alleges but a single factor under the significant relationship test that points to New Jersey  - namely, that Valley's "main office" is located in New Jersey.  (Complaint, ¶ 11).  The courts, however, have consistently refused to apply the CFA where the only alleged connection with New Jersey is the location of the defendant's headquarters.  *See Cooper v. Samsung Electronics America, Inc.*, 374 Fed. Appx. 250, 254-55 (3d Cir. 2010) (dismissing a CFA claim where the only connection to New Jersey was the defendant's corporate headquarters); *see also Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 440 (D.N.J. 2012) ("A majority of courts in this District have held that the mere fact that a company is headquartered in New Jersey or that unlawful conduct emanated from New Jersey will not supersede the numerous contacts with the consumer's home state for purposes of determining which state has the most significant relationship under Restatement § 148(2)."  (internal quotation marks omitted)).

21

In sum, Merrick has failed to allege that it or the passengers have a connection with New Jersey sufficient to apply the CFA.  Moreover, even assuming that New Jersey's CFA applies, as set forth below, neither Merrick nor the passengers have stated a viable CFA claim.

2.    **Even If The New Jersey CFA Applies, Merrick Has Failed To Establish The Elements Of The Claim**

To state a cause of action under the New Jersey CFA, a plaintiff must allege: (1) an unlawful practice, (2) an ascertainable loss, (3) and a causal nexus between the first two elements.  *See Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389 (2007) (internal citation omitted).  The courts recognize three categories of unlawful practice: (1) affirmative acts, (2) knowing omissions, and (3) violations of regulations promulgated pursuant to the CFA.  *See Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007); *Cox v. Sears, Roebuck & Co.*, 138 N.J. 2, 17 (1994).

Actionable conduct prohibited by the CFA must be in "connection with the sale or advertisement … of any merchandise or real estate."  N.J. STAT. ANN. § 56:8-2.  Under the CFA, a "sale" is defined as "any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or indirectly to sell, rent or distribute[.]"  N.J. STAT. ANN. § 56:8-1(e).  "Advertisement" is defined as "the attempt directly or indirectly by publication, dissemination, solicitation, indorsement or circulation or in any other way to induce directly or indirectly any person to enter or not enter into any obligation or acquire any title or interest in any merchandise or to increase the consumption thereof or to make any loan[.]"  N.J. STAT. ANN. § 56:8-1(a).  Merchandise is defined as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale[.]"  N.J. STAT. ANN. § 56:8-1(c).

The CFA, while liberally construed, "is not intended to cover every transaction that occurs in the marketplace."  *See Arc Networks, Inc. v. The Gold Phone Card Co., Inc.*, 333 N.J.

Super. 587, 590 (Law Div. 2000).  Application of the CFA "is limited to consumer transactions

which are defined by the status of the parties and the nature of the transaction."  *See City Check*

*Cashing, Inc. v. Nat'l State Bank*, 244 N.J. Super. 304, 309 (App. Div. 1990) (consumer is the

person "who uses (economic) goods [or services], and so diminishes or destroys their utilities.").

Moreover, a failure of a party to perform a contract does not alone mean that a consumer

fraud had been perpetrated.  *See Donnelly v. Option One Mortgage Corp.*, No. 11-7019, 2014

WL 1266209 (D.N.J. Mar. 26, 2014) at * 8-9 (finding that the defendant's alleged breach of

contract was not sufficient to establish a viable claim under the CFA);  *Rait v. Sears Roebuck*

*and Co.*, No. 08-2461, 2009 U.S. Dist. LEXIS 7540 at * 4, 9-10 (D.N.J. Feb. 3, 2009) (while the

facts may support a breach of warranty claim, they were not sufficient to state a claim under the

CFA).  There must be an unconscionable commercial practice that involves "lack of good faith,

fair dealing, and honesty."  *NN&R v. One Beacon Ins. Group*, 362 F. Supp. 2d 514, 522 (D.N.J.

2005).  Mere dissatisfaction with the other party's services performed under a contract does not

constitute consumer fraud.  *Id.*

A CFA claim is a fraud claim. Therefore, a party asserting a claim under the CFA must

state the claim with the particularity required under Rule 9(b).  *See Frederico*, supra, 507 F.3d at

200.  *Tatum v. Chrysler Group LLC*, No. 10-4269, 2012 U.S. Dist. LEXIS 171746 at *10 (D.N.J.

Dec. 3, 2012).   To plead a claim with particularity, a party must plead "the date, place or time of

the fraud, or the thorough alternative means of injecting precision and some measure of

substantiation into [the] allegations of fraud."  *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir.

2004).  Among other things, in a case alleging a CFA violation, a plaintiff must describe in detail

the date of the sale or advertisement, the nature of the unlawful conduct, the location of the

unlawful conduct, the type of advertisement, the content of the advertisement, how they were

23

misled by the conduct or advertisement, the identity of the persons involved in the unlawful

conduct and the identity of the persons with knowledge of the unlawful conduct.  *See Crozier v.*

*Johnson & Johnson Consumer Companies, Inc.* 901 F. Supp. 494 (D.N.J. 2012)  Generalized,

non-specific allegations cannot satisfy the "date, place or time" requirement of the Rule 9(b)

pleading requirement for asserting a fraud claim.  *Donnelly v. Option One Mortgage Corp.*, No.

11-7019, 2014 WL 1266209 (D.N.J. Mar. 26, 2014) at *10.

As set forth below, the law applied to the allegations herein illustrates that neither

Merrick nor the passengers have a viable CFA claim.

**A.**    **Merrick's allegations relevant to its CFA claim concerning Merrick and the passengers.**

With respect to the allegations as they relate to an alleged consumer fraud perpetrated by

Valley against Merrick, the sole allegation concerning an unlawful practice is that Valley, at

some unstated time and through some unidentified medium, "publicly represented and promised,

on Direct Air's website and in filings with the DOT, that it would operate the Direct Air escrow

in accordance with DOT Regulations and the Depository Agreements" and that Valley

purportedly did not adhere to these alleged regulatory and contractual duties.  (Complaint, ¶¶

126-127).

Merrick does not allege that it ever purchased any services from Valley, much less

depository services of the type at issue in this case.  Merrick does not allege that it is a

"consumer" of the depository services.  Merrick does not allege that it ever saw any

advertisement sponsored by Valley or took action based on a Valley advertisement.  In fact,

Merrick does not allege that Valley ever communicated directly with Merrick prior to Direct

Air's going out of business.

24

With respect to the allegations concerning the passengers whose rights Merrick seeks to assert,[5] Merrick alleges that Direct Air, *on its website*, at some unstated time "assured charter participants that 'monies paid by customers toward air fares are deposited in a DOT - approved Charter Escrow Account until the passengers' Charter flight departs.  This is a measure designed to protect Charter customers.'"  (Complaint, ¶ 34).  This posting on the Direct Air website does not mention Valley.  Merrick does not allege any facts evidencing  that Valley drafted, condoned or endorsed Direct Air's website posting.

Merrick also refers to a form of the Charter Operator-Participant Agreement between Direct Air and the passengers/participants that appeared on *Direct Air's* website which contained a provision that Direct Air would deposit the passengers/participants' funds in the depository account at Valley.  (Complaint, ¶ 37).  Merrick alleges that Valley had a copy of the form agreement in its files, but Merrick does not allege that Valley is a party to any of the Charter Operator-Participant Agreements, or that Valley drafted, condoned or endorsed the agreement, or even that Valley saw the agreement on Direct Air's website.

There is no assertion that any of the charter participants are "consumers" of depository account services.  Merrick does not allege that the charter participants purchased depository account services from Valley or even that the charter participants are potential purchasers of depository account services – services used by Charter Operators, and not airline passengers.

B.     **Merrick Has Failed to Allege Facts Sufficient to Establish Several Vital Elements of a CFA Claim.**

In light of the facts and the law cited above, it is clear that Merrick's CFA claim is deficient because it has failed to allege specific facts necessary to state a claim under the CFA.

---

[5] Merrick contends that it should be "equitably subrogated" to the rights of the passengers. Valley does not agree that the doctrine of equitable subrogation will be found to be applicable in this case and reserves all rights to contest Merrick's claims based on equitable subrogation.

First, Merrick does not allege that Merrick or the passengers are potential "consumers" of Valley's depository account services.  Second, Merrick does not allege that a sale of such depository services actually was made by Valley to Merrick or the charter participants.  Third, Merrick has not alleged that Valley advertised any services or goods to a consumer of Valley's services.  Fourth, Merrick has not alleged with the particularity required by Rule 9(b) any unlawful practice engaged in by Valley.  These deficiencies are addressed below.[6]

> *i.*      *Merrick does not allege that Merrick or the charter participants are "consumers" of Valley's depository account services and, therefore, the CFA Claim fails.*

The CFA addresses only conduct that is in connection with the sale or advertisement of good or services to a consumer of such goods or services.  *See* N.J. STAT. ANN. § 56:8-2. Consequently, the only persons who have standing to sue for an alleged fraudulent sale or advertisement are those who are "consumers" of the services or goods at issue.  *See, e.g., Medical Society of New Jersey v. American Health HMO, Inc.*, 376 N.J. Super. 48 (App. Div. 2005) (neither association of doctors nor its members were "consumers" of any service or product provided by health insurer and, therefore, could not sue the insurer under the CFA); *Sickles v. Cabot Corp.*, 379 N.J. Super 100, 116 (App. Div. 2005) (while plaintiff purchased a product that contained ingredient upon which CFA claim was based,  plaintiff did not purchase the ingredient and CFA claim was not viable when complaint did not allege that defendants made representations to plaintiff about the ingredient).

The services at issue under Merrick's CFA claim are Valley's depository account services.  Depository services are sold to airlines and other companies serving as Charter Operators as defined under the DOT Regulations.  Merrick does not allege that it or the charter

---

[6] Valley reserves all rights to contest the applicability of the New Jersey Consumer Fraud Act to any person who had no relationship to New Jersey.

participants were interested in purchasing depository account services or that they intended to purchase such services from Valley.  Merrick has not alleged anything more than it was the acquiring bank for Direct Air and that the passengers purchased tickets from Direct Air.  In these capacities, neither Merrick nor the passengers are "consumers" of depository services.

In sum, Merrick's CFA claim fails because neither Merrick nor the charter participants are even potential consumers of Valley depository account services.

> ### ii. _Merrick does not allege that Valley sold depository account services to Merrick or the charter participants and, therefore, cannot establish an ascertainable loss._

Merrick's CFA claim cannot be based on a "sale" of services to Merrick or the passengers because a sale did not occur.  Merrick does not allege that it purchased depository services from Valley, and it could not make such a claim because it never even communicated with Valley.  Similarly, the passengers did not purchase depository services from Valley. Merrick alleges only that the passengers purchased tickets from Direct Air and that Direct Air had committed fraud against the passengers.

Because neither Merrick nor the charter participants purchased depository services, or any other services or goods, from Valley, they do not have standing to bring this CFA claim against Valley because they cannot show a casual nexus between an unlawful practice in connection with the sale or advertisement of the services and an ascertainable loss.  _See_, _e.g._, _Lieberson v. Johnson & Johnson Consumers Companies, Inc.,_ 865 F. Supp. 2d 529, 537 (D.N.J. 2011) (consumer did not have standing to pursue CFA claim for baby products she did not personally purchase or use because she did not suffer an ascertainable loss); _Green v. Green Mountain Coffee Roasters, Inc._, 279 F.R.D. 275, 280-81 (D.N.J. 2011) (class plaintiff did not have standing to pursue claims for products that she had neither purchased nor used, but did have standing to sue based on the product she had actually purchased from the defendant).  Merrick's

27

claim fails because there was no sale of goods or services by Valley to Merrick or the passengers.

### iii.    *Merrick does not allege that Valley advertised any of its services to Merrick or the Charter Participants.*

The purported public "advertisement" alleged by Merrick is a statement on *Direct Air's* website in which Direct Air purportedly stated that "monies paid by customers toward air fares are deposited in a DOT - approved Charter Escrow Account until the passenger's Charter flight departs.  This is a measure designed to protect Charter customers."  (Complaint, ¶ 34).  Merrick also refers to Charter Operator-Participant Agreement between Direct Air and the passengers/participants that appeared on *Direct Air's* website which contained a provision that Direct Air would deposit the passengers/participants' funds in the depository account at Valley.  (Complaint, ¶ 37).  Merrick does not allege that Valley is a party to any of the Charter Operator-Participant Agreements.

Merrick does not assert that any passenger actually reviewed or relied upon the Charter Operator-Participant Agreement.  Instead, Merrick refers to a statement on Direct Air's website that the "U.S. Department of Transportation requires all passengers to agree/accept/sign the terms of the Operator-Participant Agreement prior to departure."  Merrick makes no assertion concerning how or when each passenger purportedly "agreed/accepted/signed" the Charter Operator-Participant Agreement.  Further, even if they agreed/accepted/signed, Merrick does not assert that any passenger actually reviewed or relied on the Charter Operator-Participant Agreement.  Significantly, the passengers to whose rights Merrick allegedly is equitably subrogated never departed on a flight, so no reasonable factual inference can be drawn that they reviewed or signed any agreement "prior to departure."

28

The content on Direct Air's website is not sufficient to sustain a claim against Valley for several reasons: (i) the content is not Valley's advertisement; (ii) the content does not purport to sell Valley's depository services; and (iii) there is no viable assertion of reliance by Merrick or the charter participants on the website.

First and foremost, any content on Direct Air website is not Valley's advertisement. Merrick does not allege that Valley prepared or controlled Direct Air's website or that Valley provided any of the content. Merrick does not allege that Valley even saw the website. And while Merrick alleges that Valley had a hard copy of the form Charter Operator-Participant Agreement in its file, Merrick does not allege that Valley obtained the agreement from Direct Air website or that Valley even reviewed the agreement. As matter of law, and even assuming the information on the website is an advertisement by Direct Air, which Valley does not concede, Valley is not liable for statements of Direct Air. *See O'Loughlin v. Nat'l Cmty. Bank*, 338 N.J. Super. 592 (App. Div. 2001) (bank not liable for representation of borrower who sold the alleged defective houses); *NN&R, Inc. v. One Beacon Ins. Group*, 362 F. Supp. 2d 514 (D.N.J. 2005) (statements of insurance broker could not form basis for CFA claim against insurer where insurer did not make or take action to make statements attributable or binding on insurer).

Here, Valley is not liable for the statements on Direct Air's website. The solitary fact that Valley purportedly had obtained, from a non-specified source, a copy of the Charter Operator-Participant Agreement that Direct Air also had posted on its website does not make Valley liable for the content of Direct Air's website.

Second, the information on Direct Air's website cannot form the basis of a claim against Valley because the website statement does not seek to sell any services of Valley. Valley is not even mentioned in Direct Air's statement on the website that Direct Air was going to deposit

passenger funds in an unspecified depository account.  And while the form Charter Operator-Participant Agreement between Direct Air and its passengers does identify Valley, the document is not an advertisement, but instead is a contract for the sale of Direct Air's tickets.  If anything, the only inference that can be drawn is that Direct Air was seeking to sell its airline services.

Finally, Merrick does not even allege that it or any of the passengers saw or relied on the website, so any statement thereon cannot form the basis of a CFA claim.  Moreover, Merrick has not even alleged with particularity that the passengers reviewed and relied on the Charter Operator-Participant Agreement, especially where the passengers to whose rights Merrick allegedly is equitably subrogated never departed on a flight, so no inference can be drawn that they reviewed or signed any agreement "prior to departure."    Therefore, Merrick's CFA claim is patently defective.  *See, e.g.*, *Crozier, supra,* 901 F. Supp. at 506-08 (failure to allege facts to support the assertion that plaintiff saw the alleged false advertising or was misled by the adverting was "fatal" to CFA claim); *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 104 (D.N.J. 2011) (only the one plaintiff who reviewed the defendant's alleged misleading website had standing to proceed with a CFA claim based on the website, while those who did not review website did not have standing).

In sum, as a matter of law, Merrick cannot rely on Direct Air's website as an advertisement by Valley that constitutes an unlawful practice proscribed by the CFA.  And as set forth below, Merrick's broad, non-particular assertion that Valley "publicly" made representations at some unspecified date and time clearly does not satisfy Rule 9(b).

**iv.**    *Merrick has not alleged with particularity an unlawful practice by Valley.*

Merrick's CFA claim against Valley is woefully lacking in particularity. Other than the content of Direct Air's website addressed in the preceding sections of this Brief, the sole allegation against Valley with respect to an unlawful practice is that Valley, at some unstated

time and through some unidentified format, "publicly represented and promised, on Direct Air's website and in filings with the DOT, that it would operate the Direct Air escrow accordance with DOT Regulations and the Depository Agreements" and that Valley did not adhere to these alleged regulatory and contractual duties.  (Complaint, ¶¶ 126-127).[7]

The courts have consistently found that CFA claims pled in a manner similar to the broad, non-particular assertions made by Merrick fall well short the heightened pleading requirement under Rule 9(b).  *See, e.g.*,  *Crozier, supra,* 901 F. Supp. at 506-08 (CFA claim inadequate because no facts asserted that purchase of goods was in connection with alleged false advertising); *Sickles v. Cabot Corp, et al,* 379 N.J. Super 100, 116 (App. Div. 2005) (CFA claim not viable when complaint not did not allege that defendants made representations to plaintiff, or fraudulently concealed information from plaintiff, or even had contact with plaintiff).

The *Lieberson* case, *supra*, is analogous to the present matter.  In *Lieberson* , the plaintiffs based a CFA claim on alleged omissions and misrepresentations made in websites, print ads, commercials and other medium.  The complaint generally identified nine alleged public statements concerning the products which were described as being deceptive, false and misleading.  With respect to a CFA claim based upon the public advertising, the *Lieberson* court found that the assertions were not pled with the particularity, stating as follows:

> However, Plaintiff has not identified whether
> these statements are made in a television

---

[7] To the extent that Merrick bases its CFA claim on the Consent Order that Valley entered into with the DOT, that reliance is misplaced. (Complaint ¶ 76) Merrick is fully aware that the Consent Order specifically states that it is not an admission of any wrongdoing by Valley, that is was entered into to settle a dispute and that cannot be used as evidence of wrongdoing under Fed. R. Evid. 408.  Merrick's blatantly improper reference to the Consent Order cannot support the CFA claim because it is not admissible.  *See New Jersey Turnpike Authority v. PPG Industries*, 16 F. Supp. 2d 460, 473 (D.N.J. 1998), *aff'd*, 197 F.3d 96 (3d Cir. 1999) (finding that civil consent decrees executed with government agencies are inadmissible as evidence of liability pursuant to Fed. R. Evid. 408); FED. R. EVID. 408(a)(1).

> commercial, print advertisement on a website or elsewhere. Plaintiff has not identified when these statements are made and when plaintiff actually viewed them. Indeed, other than putting quotations around the alleged statements themselves, Plaintiff has provided absolutely no details concerning their origins or identity. *Lieberson*, *supra,* 865 F. Supp. 2d at 539.

Moreover, the *Lieberson* court found that plaintiff's assertion that she "routinely read" various magazines that included these advertisements was not sufficient to meet the particularity requirements of Rule 9(b) because she could not state whether or when the advertisements appeared in any magazine, or that she actually viewed the advertisements. *Id.*

As in *Lieberson,* Merrick's assertions do not describe with any specificity the basis of a fraud claim. Merrick does not state the date of the alleged public statements, the location of the public statements, the medium in which the statements were made (e.g., television, newspaper, etc.), the exact content of the statements, the identity of the persons making the statements, or the identity of the persons with knowledge that the statements were made.

In sum, Merrick's allegations fall well short of establishing that Valley engaged in any type of unlawful "practice." Merrick, at most, alleges that Valley breached the Depository Agreement with Direct Air, and the bare allegation of dissatisfaction with another party's performance under a contract is not sufficient to sustain a consumer fraud claim. *See Quigley v. Esquire Deposition Services*, 409 N.J. Super. 69 (App. Div.), *certif. denied* 201 N.J. 154, *cert. denied* 130 S.Ct. 3473, 177 L.Ed. 1057 (2009); *Donnelly v. Option One Mortgage Corp.*, No. 11-7019, 2014 WL 1266209 (D.N.J. Mar. 26, 2014) at * 8-9.

Merrick's claim also is deficient because it does not cite the pertinent provisions of the Depository Agreement or the DOT Regulations that Valley misrepresented it would perform.

Particularity in these assertions is vital because Merrick's CFA claim is based on an alleged wilful violation of a duty imposed under the DOT Regulations or the Depository Agreement.

Valley's obligations under the DOT Regulations are limited, and Valley is not a guarantor that sufficient funds would be in the Depository Account to cover Merrick's chargebacks. The DOT Regulations provide only that Valley is to maintain a separate accounting for each charter group. 14 C.F.R. § 308.34 (b)(2)(vii). Valley is then obligated to release the funds applied to a charter group upon receipt of a certification from the air carrier that the flight for that group has been completed. 14 C.F.R. § 308.34 (b)(2)(ix). That is the extent of Valleys obligations relevant to this case. Except for the receipt of the certification when a flight has flown, the DOT Regulations do not require, or even permit, Valley to control the deposits into or withdrawals from the account – those transfers are controlled by Direct Air.

The DOT Regulations do not impose a duty on Valley to monitor Direct Air's performance under the depository account. In fact, the Civil Aeronautics Board, predecessor to the DOT, specifically considered and rejected proposed regulations that would have placed additional, affirmative duties on depository banks to oversee regulatory compliance by charter operators such as Direct Air. *See and compare* Protection of Charter Participants Funds, 42 Fed. Reg. 61,408, 61,411, 61,412 and 61,415 (proposed Nov. 22, 1977)(to be codified at 14 C.F.R. Part 369) *with* 14 C.F.R. Part 380.

Consistent with its limited functions under the DOT Regulations and with the fact that Valley has no duty to monitor Direct Air, Valley's functions under the Depository Agreement are limited in nature. Section 4.1 provides that Valley's functions are "purely ministerial." Moreover, Section 4.3 provides that Valley has the absolute right to rely on any instructions or documents that Direct Air submits to Valley in connection with its depository account, including

instructions about how to allocate funds to a charter group and requests to withdraw funds from the account.

Merrick's "say so" about what it believes Valley should have done in connection with the depository account does not create a duty.  Merrick's assertion that Valley had the obligation to "guarantee" that sufficient funds would be in the depository account to cover Merrick's chargeback liability resulting from its customer's fraud is misguided and not founded on the law. Allegations about conduct that a defendant should have taken and what a defendant should have known are legal conclusions "cloaked in the guise of factual allegations" and cannot form the basis of a CFA claim.  *See Parker v. Howmedica Osteonics Corp.*, No. 07-2400, 2008 U.S. Dist. LEXIS 2570 at *3, 9-10 (D.N.J. 2008).

In sum, Merrick's allegations against Valley fail to include specific allegations regarding Valley's alleged unlawful practice.  Merrick's vague allegations about alleged "public" statements purportedly made by Valley, without even a viable assertion of reliance on such statements, are not sufficient to state a CFA claim.  Moreover, there has not been a sale to a consumer of depository services.  Therefore, for the numerous reasons described above, the CFA claims must be dismissed.

## POINT FOUR

### THE TENTH CAUSE OF ACTION ALLEGING A VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT BY VALLEY AGAINST DIRECT AIR SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM WITH PARTICULARITY THAT VALLEY ENGAGED IN AN UNLAWFUL PRACTICE IN CONNECTION WITH THE SALE OR ADVERTISEMENT OF ITS DEPOSITORY SERVICES

The Tenth Cause of Action is virtually identical to the Eighth Cause of Action, except that Merrick alleges that Valley committed a consumer fraud on Direct Air, while in the Eighth

34

Cause of Action the alleged fraud was perpetrated on Merrick and the passengers.[8]  This claim is deficient for many of the same reasons that the CFA claim against Merrick and the passengers is deficient.  And while Merrick can argue that Direct Air, unlike Merrick and the passengers, was a consumer of Valley's depository services, Merrick cannot reasonably assert that Direct Air's own website postings were misleading to Direct Air.

Moreover, this CFA claim, which was made for the first time in the Second Amended Complaint, is not asserted in good faith because Merrick knows that Direct Air committed fraud in connection with its handling of its depository account.  In fact, Merrick alleges in its Fifth Cause of Action that Direct Air perpetrated a fraud by deceiving passengers that it would deposit passenger funds in the depository account until such time as their flights had flown, but that Direct Air did not abide by its representations and obligations.  In the Sixth Cause of Action, Merrick alleges that Direct Air converted Merrick's funds by not abiding by its obligations under the DOT Regulations.  Notwithstanding Direct Air's fraud, Merrick has the audacity to assert that Valley committed consumer fraud on Direct Air.

In addition to the blatant inconsistency that Valley committed a consumer fraud on Direct Air when Direct Air is the party committing the fraud, the Complaint is patently deficient in pleading fraud with particularity.  Because Merrick cannot rely on Direct Air's website postings as a source of fraud, Merrick's *sole* allegation with respect to an unlawful practice as against Direct Air is that Valley, at some unstated time and through some unidentified format, "publicly represented and promised, on Direct Air's website, and in filing with the DOT, and directly to Direct Air, that it would operate the Direct Air escrow accordance with DOT Regulations and the

---

[8] Merrick brings this claim by virtue of an assignment of the claim by the Trustee of the bankruptcy estate of Direct Air.

DM1\4982966.4

Depository Agreements" and that Valley did not adhere to these alleged regulatory and contractual duties.  (Complaint, ¶¶ 136-137).

As set forth in Point Three, *supra*,  Merrick must precisely delineate the content of the alleged representations made directly to Direct Air, the identity of the person at Valley who made the representations, the date the representations were made, and the manner in which Direct Air relied on, and was harmed by, the statements.  *See Lieberson*, *supra*, 865 F. Supp. 2d at 539.  Merrick has failed to allege any facts to support a CFA claim.

The purpose of pleading fraud with particularity is to prevent specious claims brought to extract settlements.  *In re Burlington Coat Factory*, *supra*, 114 F.3d at 1418. The need for particularity is even more compelling for this cause of action because Merrick has asserted that Direct Air perpetrated a fraud.  The inconsistency of Merrick's position renders the CFA claim suspect, at best, and Merrick should be required to explain with great particularity the facts supporting an assertion that Valley defrauded the fraudster Direct Air.  Merrick has not done so, and Merrick will not be able to state a claim because it knows that Direct Air committed a fraud.

## **POINT FIVE**

### **THE FIFTH CAUSE OF ACTION ALLEGING AIDING AND ABETTING FRAUD MUST BE DISMISSED BECAUSE MERRICK FAILS TO STATE THE CLAIM WITH PARTICULARITY**

In the Fifth Cause of Action, Merrick asserts that Valley aided and abetted a fraud perpetrated by Direct Air.  The Fifth Cause of Action must be dismissed because Merrick does not plead the fraud with the requisite particularity required by Rule 9(b).

The general elements for an aiding and abetting claim, where recognized under state law, are set forth in the § 876(b) of the Restatement (Second) of Torts (1979) as follows:

36

For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
(a) does a tortious act in concert with the other or pursuant to a common design with him, or
(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person. RESTATEMENT, *supra*, § 876(b).

Furthermore, to impose liability the Restatement states, "it is essential that the conduct of the actor be in itself tortious." *Id*., comment c.  A defendant "who innocently, rightfully and carefully does an act that has the effect of furthering the tortious conduct or cooperating in the tortious design of another is not for that reason subject to liability." *Id*.

Valley does not concede that an aiding and abetting claim is applicable to this case and reserves all rights and defenses related to this cause of action.  However, even assuming the claim is applicable here, courts have found that a plaintiff needs to plead the fraud with particularity. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1064-65 (11th Cir. 2007) (affirming dismissal of aiding-and-abetting-fraud claim because it "fail[ed] to conform to the requirements of Rule 9(b)"); *Am. Gen. Life Ins. Co. v. Altman Family Ins. Trust ex rel. Altman*, No. 08-399, 2009 WL 5214027 (D.N.J. Dec. 22, 2009).  The Court addressed this issue in *Am. Gen. Life Ins. Co, supra,* stating as follows:

The Federal Rules of Civil Procedure provide that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). While Count II specifically alleges fraud, Counts IV and V, aiding and abetting and conspiracy respectively, are also subject to that standard as they are fraud-derivative actions.

In the instant case, with regard to the fraud committed by Direct Air,  Merrick recites in its Fifth Cause of Action only the elements of a fraud claim, but recites few supporting facts.  Merrick's factual allegations are found in Paragraph 56 of the Complaint which reads as follows:

> Upon information and belief, Direct Air improperly depleted the VNB depository account by, among other things, submitting false reports to Valley: (a) seeking to withdraw fictitious revenue allegedly generate by flights that had flown, (b) seeking to withdraw the same money twice, and (c) seeking to withdraw "cash" that had never been deposited.  (Complaint, ¶ 56).

As set forth in the authorities cited above in this brief, this scant allegation is patently insufficient under Rule 9(b).  There is no detail of Direct Air's fraud.  Merrick does not state the "who, what, where and when" of the fraud as required by case law interpreting Rule 9(b).  The persons perpetrating the fraud are not identified and their location is unstated.  The dates of the fraud are not stated, and there is no particularity concerning the manner in which the fraud was committed.  Therefore, the Fifth Cause of Action should by dismissed because Merrick has failed to plead this cause of action with particularity.


## IV.    **CONCLUSION**

The Court should dismiss the First, Fifth, Seventh, Eighth and Tenth Causes of Action because Merrick has failed to state a viable claim as a matter of law.  The First Cause of Action fails because third party beneficiary rights are negated by the express language in the Depository Agreement.  The Fifth Cause of Action fails to state an aiding and abetting claim with the requisite particularity required by Rule 9(b).  The Seventh Cause of Action fails because the courts unanimously have found that no private right of action exists under the FAA and the DOT Regulations. The Eight Cause of Action must be dismissed because the New Jersey CFA does not apply and, even if it did, Merrick has failed to state a claim under the CFA with the requisite particularity.  Finally, the Tenth Cause of Action should be dismissed for many of the same reasons as the Eighth Cause of Action and because it fails to state any conduct by which Valley defrauded Direct Air.  Because Merrick already has had the opportunity to re-plead claims in its

Second Amended Complaint, and because many of these infirmities cannot be corrected, these causes of action should be dismissed *with prejudice* without the right to re-plead.

Dated: September 2, 2014

**DUANE MORRIS LLP**
A Delaware Limited Liability Partnership
1037 Raymond Boulevard, Suite 1800
Newark, New Jersey 07102
(973) 424-2000
*Attorneys for Defendant*
*Valley National Bank*

By:  /s/ *Gregory R. Haworth*
      Gregory R. Haworth, Esq.

DM1\4982966.4